The next case will be 06-1191, General Dynamics Decision Systems, Inc. v. Secretary of the Army. We would like to begin by inviting the court's attention to and correcting what we have noted is a misstatement that appears in the government's brief. It's somewhat garbled, but we believe it might tend to create a misimpression. It appears at page 8 of their brief at the bottom of the page. It says that, pursuant to a particular contract provision, DCAA deducted $253,295, the quantum allowed by Ford in this case, from the final price by deducting pro rata shares of that disallowed cost to, as the word used, the 1987 and 1981 payments to Motorola for those line items. The reference in support of that statement is to Joint Appendix pages 71 and 72, which are indeed the DCAA audit report. If you go to that audit report, particularly Joint Appendix page 71, what you will find is that what DCAA did in spreading out that amount over several years was to determine, and it says spreading, the $253,295 to each year based on the amount of payments by General Dynamics, and you'll excuse me please if from time to time I say Motorola instead of General Dynamics, the prime contractor is intended, to EIDN, the subcontractor, each year. The point is here is that there is in fact no proof and no finding in this record of any government payments to the prime contractor based on the EIDN subcontractor price, and there's a reason for that. The reason is, and an indication of the reason can be found in the Joint Appendix at page 220001. This is modification 91. That was the modification by which the contracting officer agreed to release a pay to the prime contractor of some $1.2 million and not, he determined not to pay, he would not pay another $500,000, so that he would reserve that against the potential liability for the EIDN defective pricing, and at page, Joint Appendix 220002, which is page 2 of that modification, it says what he is dealing with here is Motorola calculation of target price. Now the reason that that mod says that is in the ordinary government supply contract situation, the government's progress payments as the contract goes along are based on the prime contractor's cost. So when the contractor pays a sub, he puts that cost in his progress payment bill, and he's paid 90% or whatever the progress payment rate is. Fixed price incentive contract is different. Fixed price incentive provisional payment clause is within the FDI clause itself. That's DAR 7108.1, and it's at sub-paragraph F, which says that what the contractor gets paid as he goes along is the target cost. Now, the target cost of this contract was negotiated between Motorola and the government in September of 1986 without any participation by the sub. The sub's defective subcontract price wasn't negotiated until six months later, and there was no deficiencies, no defective pricing in that target price. It was not affected by the item defective pricing here. In fact, one of the board decisions here says that the price negotiated in September of 1986 was not affected by the defective pricing. In sum, no part of the item $5.2 million subcontract price was ever reimbursed by the government to Motorola. There was no overpayment due to the defective pricing of that subcontract. Next, we would like to offer to the court, or point out to the court, a supplemental citation, a decision by another panel of this court that contains a discussion on one of the legal points we've raised, and a decision that was issued since the last briefing in this case. The decision is Sharp-Kabushiki-Kaisha v. ThinkSharp, Inc., and the citation is at 448 Fed 3rd, 1368. The discussion of claim preclusion appears at page 1370. Concerning claim preclusion, the only issue here of the elements of claim preclusion is whether a claim for a defective pricing reduction to costs incurred relies on, and that's the claim that the board identified here, have the same transactional facts as the claim for the defective pricing reduction to target price, which is the claim allowed in the board's previous final judgment on this case. To be clear, the claim quantified as a reduction to target price in Motorola 3 was for a defective pricing reduction. It was for a defective pricing reduction to the EIDN subcontract. It was based on the same defective pricing, the same subcontract, the same amount of the subcontract price. We would point out that in its brief, the government cites as authority for a cost disallowance DAR 3-807.10-D3, and the same authority was relied on by the board at 03-1 BCA, page 159-125. We are also concerned that there may be some confusion created by the government's repeated repetition of the term total costs, and we're concerned that that could create the impression that total costs are necessary to liquidate a defective pricing claim. In fact, it's quite the opposite. The total costs, or that is, all incurred costs that are used in the final pricing of a fixed price incentive contract are, by the definition of that clause, allowable costs. Don't use total costs incurred. You use all allowable costs incurred. In order to know that, in order to know what the allowable costs are, you must know the exact number of any unallowable. And that is what was purportedly computed in Motorola 3 by the board, and is applied twice in the decision here at issue. We also note the board's own words in this case as bearing on the issue of claim preclusion. The board says that the government's claim is not barred in the argument it's dealing with its judicial estoppel because the government's litigation positions, and this is what the board says, address different contracting officer final decisions and different defective pricing reduction. The first partial, the second complete. We would ask the court to compare that statement by the ASBCA, justifying its result here, with Restatement of Judgments, Section 25, Comments C. And Comments reads, if a plaintiff who has recovered a judgment against a defendant in a certain amount becomes dissatisfied… Mr. Jordan, we're into your rebuttal time. Do you want to save it, or do you want to close it out? I'll just complete this quote, if I may, Your Honor. Well, I think we can read that. Ms. Hogan. Good morning, Your Honors. May it please the Court, the board's decision should be affirmed. The board drew a distinction between target and actual and issued two separate decisions, Motorola III and the present decision, based on two contracting officers' final decisions. Actual and the application of defective pricing to the total final price could not have been decided in Motorola III, because as the board stated, those facts were not in the record. And the board expressly declined to reach that issue, sending it back to the parties to determine quantum on their own. When the parties were unable to come back to reach an agreement on that, the appellant asked the board to reopen the case to determine total final price, final costs, and the costs incurred. Those items were not in the record in Motorola III, and that is why allowing the government to address that in a final decision in 2005 and the board addressing it was entirely proper. Now, in the reply brief, General Dynamics takes the position at both pages 8 and 11 that the claim preclusion issue arises because the contracting officer could have decided actual cost at the time he did target cost, and he didn't do so. Your Honor, as the board noted, in both this decision and Motorola III, there was no evidence in the record that actual costs were completed. In fact, in the 2001 modification, the parties… Well, the contractor is saying after April 3, 1987, the facts were available. The numbers were available to compute both target costs and actual costs. Well, I believe that's incorrect, Your Honor. In 1987 was the date that the subcontract was entered into and the defective pricing was certified. We did not know what total actual costs incurred were going to be in 1987 because the contract was in existence until the late 90s. The way I understood their claim preclusion argument, they said that at any time after April 3, the information could have been deduced and that the government has an obligation to present both target costs and actual costs. If they only present one, their claim precluded later on is the second. Isn't that a fair reading of the reply brief? That's a fair reading of the reply brief. And you're being polite. Wouldn't you say that's preposterous? I agree, Your Honor. I believe that it would have been impossible for the… Whether it's impossible or not, in the government contract field, isn't it permissible for a contracting officer to decide liability but not quantum? Yes, Your Honor. And then run liability up the flagpole and see if it works and do quantum later? And that's very common in board proceedings where… But under general dynamics theory, quantum would be claim precluded because you didn't decide it when you decided liability and you could have? Correct, Your Honor. And that's clearly not possible. And I'd like to also add the think-sharp case that the appellant has presented, I think, does provide appropriate language for this court to support the Army's position, which is that additional flexibility is recognized when we're dealing with administrative proceedings. This is an ongoing contract. Contracting officers issue separate final decisions addressing separate issues, and that's just the way the board proceedings go. So this is not something new or unusual that hasn't been before the board before. Can you think of a case in which claim preclusion has been applied in a government contract case? I cannot think of one, Your Honor. I didn't see anything in the briefs, I mean, telling that ordinarily you would find some case law that would say, well, here's a case in which claim preclusion or even issue preclusion was applied so you could get some feel for how it compares to this case. Right. And I would have looked for those cases, Your Honor, and I was not able to find any to compare to this case. And I think that suggests that the way that this claim has been litigated and the parties have worked together is entirely consistent with the way that the board works and the way that government contracts are dispensable litigation. Well, it's certainly possible to have issue preclusion in a government contract case, is it not? I mean, that's easy to figure out because the issue could recur in a second case. Yes, Your Honor. But claim preclusion is, in the restatements, as we pointed out in our brief, we do need to look at sort of the practical aspects of the litigation, and practically speaking, it would have made sense for the contracting officer to do target first because we knew what the target price was at the outset and to wait until General Dynamics had submitted its cost proposal, that cost proposal had been audited, and then the parties negotiated what the final price would be before it brought a contracting officer's final decision in the event that the parties couldn't agree on those costs. Could you comment on the issue of interest and with particular reference to the mod 91 that Mr. Jones referenced during his argument, the $500,000 figure that shows up on that mod? You know the one I'm talking about. Yes, yes. The $500,000 was withheld at that point. At that point, the time clock for interest stopped running. It started on the date of the contracting officer's first final decision in 1993 and stopped in 2005. It stopped at that date. Yes, that's what the board held. The theory was that the government had the use of the $295,000 or whatever that number was after the mod withheld the sum, and so consequently no interest was run on something the government had access to. Correct, but the government still was entitled to… Interest that had accrued. The interest that had accrued. And a demand, a contracting officer made a demand for same, correct? Right, and that's consistent with the board's decision stating that General Dynamics still owed the government the $128,000 in interest as well as the $8,000 in change. What happens to the difference between the principal and the interest in the $500,000? There's about $118,000 left in there somewhere. $500,000 is too large a sum to cover both the principal and the interest, isn't it? Yes, the $500,000, you subtract the $253,000 for the liability. There was also about $90,000 in markups that DCAA also deducted from that, and I think that the way you compute the rest of that money was just other issues within the contract, other contract line items that weren't submitted and just other adjustments that were not related to this issue. I would also like to address the General Dynamics argument that it never paid or it was never overpaid, the money. In the audit that was attached to the contracting officer's final decision, the auditors noted that there was never going to be a magic check for $253,000 that they could find in the records, and so what they did was during the scope of that subcontract from 1987 to 1991, which as we know is far completed, they reduced by pro rata shares that $253,000 from that price. So although there's no check that's going to say $253,000, that money was paid to Motorola in the context of those subcontracts. So that's the way to explain why it appears that they were never ever paid. Then that's based on cost accounting standards that are consistent. Simply, Your Honor, I apologize that the briefs perhaps were not as clear as they could have been in explaining this issue, but it really is just an issue of two separate board decisions premised on two separate contracting officers' final decisions, one adjusting target, the other adjusting total, and that's entirely consistent with board proceedings and with the government contracting. And I'll rest that case on the briefs if there's no other questions. All right. Thank you. Mr. Jones? Judge Bloominger, in answer to your question, can a contracting officer decide entitlement without deciding quantum? In connection with the government claim, the answer to that is no, and the reason for that is that a claim is a demand for an amount in some certain. The claim of the government has to be the subject of the contracting officer's final decision. So as did the final decision in 1983 and 1993 that this contracting officer issued, it had a definite amount of quantum, and it must, in order to be a claim. And at that time, that claim was $400,000, and what contracting officers are supposed to do when they issue a claim of that nature is not pay the contractor that money until the claim is adjudicated so the government doesn't have to get it back. And that is indeed what happened in this case, and that's why there's $500,000 still unpaid as a result of this mod 91 in 2001. It was never paid to this contractor. As to determining the amount of an unallowable composite, which is the claim here, the board's decision, this is Motorola 3, 02-2 BCA, at 158363, says, we hold that the respondent has the right to disallow the $253,295 cost element of contract 879 pursuant to the DARRA Defective Pricing Clause. It is perfectly possible, reasonable, and appropriate to quantify a cost disallowance claim at any time before the contract is finally priced. I'd also note the counsel is not correct, that when this claim first approved and was issued, that the target price was known. The target price of this contract changed repeatedly. We're talking mod 91 here throughout this contract. You didn't know the total target price any more than you knew the total incurred cost until after these claims were issued and after these events occurred. Finally, I would like to note what we consider to be the implication of the board's decision here issued. Clearly, what you have here is the government coming back for a second bite at the apple. They asserted, litigated, liquidated, and got a final judgment on a claim for adjustment, for reduction of the target price, and then came back and said, oh, we also want the same adjustment out of incurred costs. We want to make a disallowance to incur costs in the same manner. Let us offer an analogy. The contractor, during performance, puts in a claim for equitable adjustment, equitable adjustment to the target price, and that's what it wants, because the higher the target price goes and he underruns it, the bigger his share, the bigger his profit. Since in most fixed-price incentive contracts, the share ratio is 50-50, you can make a big profit on another one. And he liquidates that claim to judgment, gets to the end of the contract after that, and discovers, whoops, I overran the ceiling price. Now I want to increase the ceiling price. The question here is, can he do that? Or is he barred by the previous judgment that he got increasing his target cost, his target price? And we submit that that's clearly the case. The rules on claim preclusion are that you bring all the claims for all the amounts that derive from the same transaction effects. Do you have a BCA case in which that series of events occurred and the contractor was barred? No. To my knowledge, that has not occurred, Your Honor. To my knowledge, what occurred here has never occurred. The government makes a claim to disallow it. On behalf of a contractor, would you espouse that that should be the correct result? No. No, we're saying... No, and you're hypothetical. I mean, you say the contractor got disadvantaged because he didn't bring both of these claims at the same time under, you say... Yeah, we think the law is clear that he has to lose that claim for... What? The second bike claim for... All right, the case is submitted. We'll be on a brief recess.